and I guess the actual defendant is Durain. Good afternoon. May it please the court, I'm Melissa Tuohy appearing on behalf of Gregory Durain. To rehabilitate means to restore to a former capacity, to restore to good repute. Success means to reach a favorable or desired outcome. The Onondaga County Family Court System successfully rehabilitated Mr. Durain in the years following his commission of the 2005 sex offense through custodial adolescent sex offender treatment. Proof is found in the OCFS records coupled with the fact that Mr. Durain has not committed a sex offense since 2005, nor has he flown any red flags indicating he has a propensity to do so in the future. As such, there is no sex offense behavior to be deterred or any need to protect the public from Mr. Durain committing such an offense in the future. By imposing this special condition, 18 years after the 2005 offense for which Mr. Durain received extensive custodial treatment, the district court is going backwards when Mr. Durain has already gone forward. Your client was sentenced on the federal crime in January of 2020? That's correct. And there was no, at the time of his sentencing, the PSR made no request with regard to this evaluation? Right. And it is fully outlined in paragraph 65 of the PSR, all of that conduct and what happened with the, while he was being adjudicated a juvenile delinquent. That was all in the pre-sentence report. It was never mentioned at sentencing in any sentencing memo of the government or the defendant or at the sentencing hearing. The district court seemed to have a concern that, now I'm saying the age of the conduct, it seemed to have two concerns. One, that it was a sexual offense involving a child. Of course, the offense occurred at the time that the defendant was 15. Yes. Right. And that there might be children present. Didn't probation decide where he was going to live when he got out of jail? They sure did, Your Honor. They had to approve it, did they not? They approved that residence. They sure did. And at the time of the modification and the imposition of this evaluation, did they not have to approve where he lived then? Yes, he was at the same residence that they had approved. So, this whole time that he was at this residence, and how many years had gone by? So he was on supervision for eight months at the time that they filed the modification. So he- It was an indication during a hearing that the supervisor disagreed with the probation officer that authored the pre-sentence report, correct? That is correct. Yes. Yes. So that's a reason to modify the terms and conditions of his probation because they had an internal dispute, which didn't get ironed out before he was sentenced? Correct. And that's why we're here. And the district court seemed to think that it was because there was also no proof in the record that he hadn't completed the treatment in the family court. That was a- He did it when he was sentenced. He was sentenced as juvenile delinquent because he was under 16. Yes. Okay. And so there he was remanded, he was under the control of the family court, and he had a treatment program that he didn't do well, but then he went into a residential facility. And he did well. He did very well. I mean, the records themselves, I think- Was that at industry? Yes. Okay. Yes. Yeah, because I noted that it indicated industry. So he went to industry and went through residential treatment there? Yes. And he went to the fourth stage and then he aged out or- Yeah. They extended the time until his 18th birthday. So he, the order was, it's kind of confusing. The records are a little bit confusing, but the order was issued in September of 2006. It looks like he went into industry in December of 2006. And then they extended the time to his 18th birthday so that he could complete all the program and have some aftercare treatment. And they did all the stuff that they're supposed to do in terms of approving his mom's residence for him to go to as part of his release plan. Was the information about the family court treatment available at the time of his original sentencing? Yes.  Okay. Thomas, which is the case that the court seemed to look to, which is somewhat analogous. In Thomas, the individual had a sex offense and was incarcerated, but then at the time he got out of jail, he timed out. Right. He never- So therefore, he never did any treatment. Yeah. There's a couple of differences with Thomas. That's the main one, that there was no evidence in the record of treatment where there is here. Also, Mr. Drain was on supervision for a period of eight months before they sought this modification. In the Thomas case, that was like happening at the time of sentencing. Well, his record on supervised release isn't exactly stellar, but it's not no indication of any kind of inappropriate behavior in this regard. In this, right. He did test positive for drugs, which kind of inspired the modification. They were seeking the modification for community service in response to his drug use, and then they just sort of added this one on because they were like, we went through his ... Probation officer Mathers, the one who was seeking it, said, oh, if we see anything in the history, everybody should get a psychosexual evaluation, but this is a special condition. You can't do a general overall that everyone gets a psychosexual evaluation when it's a special condition that's supposed to be specialized to Mr. Drain under the statutory factors. But we're looking at this on a plain air context, aren't we, because it wasn't really ... I mean, for certain factual findings, but not for the actual imposition of the ... Because we did object and there was a hearing, so ...  All right. You're right about that, I apologize. Yeah, so it's an abuse of discretion. All right. Thank you. Thank you. What's the standard of review here? It is an abuse of discretion for the imposition of the condition. And the district judge has had this case for how long? So since ... So he oversaw it, the underlying offense, and Mr. Drain was officially convicted in January of 2020. And then ... And so at this point, he still has not had the evaluation. He has been on supervision for 26 months to this date. And there have been no issues, no indication that there is any risk of him. And also, I just want to also note that the district court's perspective the whole time was to sort of superimpose adult status on him by inferring that he now may present a danger to minors. He was a minor when he committed the offense against a minor. He was not an adult who abused a child. All right. Thank you.  Thank you. Good afternoon, and may it please the court, Joshua Rothenberg for the government. The purpose of a psychosexual evaluation condition is to allay uncertainty that the defendant presents a danger to anyone in that way. Was he any different on the day of his original sentencing? No, Your Honor, he wasn't. But in United States v. Parisi, P-A-R-I-S-I, this court said that there do not have to be changed factual circumstances ... Speak right up, I can't hear you. I'm sorry, Your Honor. In United States v. Parisi, this court said there do not have to be changed factual circumstances to modify the conditions of supervised release. I think Your Honor is correct that a different probation officer looked at this, had a different take. The judge agreed with the second probation officer. It was not based on his violation. On page 84 of the record, the probation officer explains that about six months into supervision, they do an in-depth review of how supervision is going. And it was part of that review that discovered that the, I should say, the supervisor, a supervision probation officer, discovered this prior offense. And at that point, probation did recommend the condition. There is no problem with that. Parisi does say that there does not need to be changed circumstances. And in this case, when the supervision probation officer discovered it, he filed a petition for modification, and the judge ultimately agreed. That is perfectly fine. United States v. Thomas had ... What kind of a hearing was there on this question? So, Your Honor, there were actually two hearings. There was an initial hearing where everyone agreed to go look for the records and think more about it, basically. Then there was an evidentiary hearing in which the defense called both probation officers, the one who prepared the PSR and the one who handled supervision, and asked them questions about why they had made certain decisions. At that time, the government entered the family court records, and the probation officers were asked about those records as well. How long was this hearing? I'm not sure, Your Honor. The full transcript is in the record, but I don't know how long it took in minutes. I only know, I would say, not off the top of my head, in pages. I'm trying to get an idea of how the district court came to exercise its informed discretion. Well, the district court also reviewed the materials here. There was a substantial gap between the first hearing and the second one due to scheduling issues, and the district court was very familiar with the family court records. If you look at its explanation, the district court reads portions of the family court records into the record. It also is referencing and paraphrasing other portions. It's, I think, interlocuting with the defense attorney when she makes comments. Was there perhaps some misunderstanding in terms of this issue of whether or not he had access to minors? Does the district court's decision suggest perhaps there was some lack of clarity about the idea that at the residence where he was staying that there was access to minors, which, in fact, appears not to be the case, that he had adult... So, Your Honor, it appears that there are no minors living at that residence. There are minors who visit that residence, and the district court's ultimate finding that he had access to minors at that residence is true. His cousins' children do come to that residence. That is something that the defense has been consistent about, both before the district court and in appellate briefings. So he does have access to minors. There was some confusion about whether the minors lived there. The defense counsel said very clearly that they didn't, and so I don't think there's any indication the district court was confused about that. That is one of the facts that would be under not only clear error but plain error review, though, Your Honor, and I don't think that standard is met here. And I do think United States... But here are the findings. Durain's drug violation indicated risk behavior violated the court's trust, assuring it was not amenable to following his conditions. It was the court's job to protect the community from any potential harm from Durain and his condition is a mere evaluation of possible threat to the community. It was 19 years ago, and a threat to the community. He's no different than on the day he was sentenced, and that's not a question of probation officer disagreement. There's nothing different about this man, and all of a sudden, you know, it seems arbitrary to me. I mean, I can understand when someone raises the aspect of someone's had a sexual offense because there's a high degree of recidivism among sexual offenders in some categories, okay? But this is all of a sudden it's imposed, a condition, and there's no change in his conduct? So, Your Honor... I mean, I don't understand. If I could take that in two parts. No change in conduct. Again, Parisi says there does not need to be changed circumstances. For whatever reason, the district court focused its attention more on this issue during the modification proceeding. Parisi says that is okay, and Parisi is a precedential case. In terms of the timing of the offense, yes, it's 18 years ago. Thomas was 36 years prior to the sentencing. There was a case earlier this summer. Thomas was convicted of a crime. He was an adult, right? I don't believe so. I believe he was convicted of a crime. He was as an adult, but he was a juvenile. He was 17 years old at the time. So he was a minor. He was a potential youthful offender. I apologize for the confusion, Your Honor. Yes. He is a minor was the point I was making. You are certainly right. He was 2 years older. But New York recognizes the difference with regard to his criminality. Yes. But at the same time, this was a very serious offense. It involved force. There was also the... I don't disagree with you about that. And there were also the Elmcrest records. And in the Elmcrest records, we see not just resistance to treatment, but further antisocial behaviors. There's mentions of him sexually acting out. Yes, he then goes to industry. What, sexually acting out when he was 15? Yes. So talk about now. What was he doing now that suddenly required this? Your Honor, what we are asking for is a psychosexual evaluation. So the answer is nothing. That's correct. Because he previously, 19 years earlier, did it, it's reasonable now. Is that the answer? Yes. And because Thomas did it 36 years prior. That's all I want to know. Okay. Thank you, Your Honor. Thomas did it 36 years prior. Again, there was no sexual offense that had happened in Thomas. That doesn't mean that I agree with Thomas. That's fair, Your Honor. It was 5 years before, and it was full sex offender conditions. Here it is a psychosexual evaluation. And the purpose of a psychosexual evaluation is just to resolve any lack of clarity. Why don't you describe that modification made by the district judge? What does it consist of? The condition requires him to undergo a psychosexual evaluation. What does that mean? As I understand it, he will go sit with a trained either psychotherapist or other evaluator who will determine whether or not he presents a sexual danger based on conversation with him and looking at his record. So he assesses risk now on something he did 19 years ago? Yes. And if the answer is that there is no risk now, and the district court is very clear about this, if the answer is, I think district court's exact words were, that's old conduct, there's nothing to worry about, great. There's no further issue. But if the evaluator determines that he still presents a risk, then at that point sex offender treatment would be warranted. And then what happens? If he determines what? If he determines that the defendant is at risk of acting out sexually again, then sex offender treatment is warranted. And what would that consist of? Do we know? So the district court didn't specify exactly. I think there's a typical sex offender treatment condition that would be directing sex offender treatment, again, usually with a trained therapist of some form. The district court might also determine that conditions, for example, keeping him away from minors might be warranted at that time. But that's only if the evaluator thinks that there is a danger here. And if Your Honor is right, and it's been so long that he does not present a danger to anyone, and I think that's something that would be excellent, then he has to undergo absolutely no further deprivation of liberty. I can appreciate the pressures of being on the child bench without facing him, but we're looking for a rule here, and that's my major concern, to be honest with you. Yes, Your Honor. And I think the rule we would ask for is if the record is unclear as to whether the defendant presents a danger, the district court may order a psychosexual evaluation, again, not full sex offender treatment, but a psychosexual evaluation so that that lack of clarity can be resolved. Here the record is unclear because we have the serious offense a long time ago. The records do not indicate whether or not he completed the program. The most recent record that we have indicates that he was on step two of four, hopefully would progress to step three, and then hopefully step four, and we don't know if that happened. And this evaluation, do we have some sense of how long it takes or what it consists of? I don't believe we do, Your Honor. Can I just ask you, so is it your view that for anyone effectively who has a prior sex offense of this kind, that this type of condition is appropriate regardless? I mean, you made the point that there doesn't have to be new conduct or changed circumstances, and so is it effectively that if you have a prior sex offense, it is always appropriate to impose one of these conditions? I think it would be a totality of the circumstances analysis, Your Honor. I think the age is certainly one factor, and I understand why it weighs heavily here. I think completion of sex offender treatment would be a factor. I think the defendant's criminal history since, whether sex offense-based or not, is something that might weigh on the district court in terms of respect for law. Ultimately, these are the factors the district court has to weigh in determining whether or not a psychosexual evaluation condition is warranted. I'm sure there are situations where the prior offense was less serious or where we knew that sex offender treatment had been successfully finished where the condition would not be appropriate. And if this evaluation goes forward, there will be a report, presumably, to the district judge, correct? I believe so, Your Honor. And is there then some sort of hearing possible? Your Honor, the way the condition is written, it sounds like the sex offender treatment would automatically take place. I understand that could present a different problem, but it's not one the defendant has raised in this case. But you would have no problem with having opposing counsel ask for a hearing regarding any response, which would seem to be unexpected?  Absolutely, and the defendant is free to move for reconsideration of the conditions at any point under 3582. We would ask you to affirm. Thank you, Your Honors. All right. Thank you. In response to the government's citing of Parisi, it is true that there don't need to be changed circumstances. However, the imposition still has to meet the statutory requirements, which are not present here. The government claims that the record is unclear as to whether Mr. Durain successfully completed sex offender treatment, adolescent sex offender treatment. But they ignore the records that talk about the treatment that he actually received. He went to group counseling two times a week for 90-minute sessions. He had weekly individual counseling sessions. He attended core intervention groups. He was part of a youth development system. He was in the second stage of a four-stage program where he was advancing towards the third stage. That was in July. They had already looked into his release plan of going to his mother's house. It's their burden. These records say these positive things about his treatment. They have not shown that it was unsuccessful. And Mr. Durain has shown it is successful by his failure to commit another similar offense. His issues are drug-related, not sex offense-related. For these reasons, we'll rest on our papers unless there's any other questions. But we ask that the court vacate that condition in post. All right. Thank you very much. Thank you to both of you. Thank you. Thank you. Nicely argued. Safe journey home.